LUTHER TOWNSEND, plaintiff in error, *v.* THE PEOPLE OF THE STATE OF ILLINOIS, defendants in error.

*Error to Cook.*

In an indictment against a prisoner, for having in his possession forged bank bills, &c., with intent to pass the same as true and genuine, it is unnecessary to allege that the bills are for the payment of money.

The term bank bills has a definite and certain meaning. It is a written promise on the part of the bank, to pay to the bearer a certain sum of money, on demand.

An objection to the sufficiency of an indictment, because a certain fact appears by way of recital, and not by positive averment, goes to the manner of pleading the fact, and not to the fact itself, and therefore should be taken advantage of upon a motion to quash the indictment, before trial.

Where there are three good counts in an indictment, and a general verdict of guilty, the judgment must stand, even if the fourth count should be adjudged bad.

THE plaintiff in error was tried at the September term, 1841, of the Cook Circuit Court, before the Hon. Theophilus W. Smith and a jury. He was found guilty, and sentenced to be confined in the penitentiary for four years. A motion was made in arrest of judgment, and overruled.

JUSTIN BUTTERFIELD, for the plaintiff in error:

The indictment is defective. There is no averment in any count, that the bills were for the payment of money. The recital of the fact is not sufficient; an express averment is necessary. Gould's Plead. 63–65. The fourth and last count is bad in all respects.

I wish to raise the question, where there is one bad count, and several good ones, whether the indictment can be sustained.

At common law, in civil actions, where there is a defective count, judgment will be arrested. It would be so here, but for our statute. That statute does not apply to criminal cases. He cited Curtis *v.* The People, Breese 197 ; 1 Chit. Crim. Law 249.

J. LAMBORN, Atttorney General, for the defendants in error:

Bank bills are always payable in money, and no averment of that fact is necessary.

Promissory notes are not always payable in money, and, therefore, in an indictment for having in possession a forged promissory note, such an averment is necessary.

After verdict, the plaintiff cannot object that one of several counts is defective. The real merits are not affected by these objections, and they cannot be sustained after verdict.

DOUGLASS, Justice, delivered the opinion of the Court:

Luther Townsend was indicted at the September term, 1841, of the Cook Circuit Court, for having in his possession, with intent to pass, certain forged bank notes. A trial was had, and he was convicted, and sentenced to the penitentiary for four years. The indictment contains four counts, the first of which is as follows:

" The grand jurors chosen, selected, and sworn, in and for the county of Cook, in the name and by the authority of the people of the State of Illinois, upon their oaths, present, that Luther Townsend, late of the county of Cook, aforesaid, laborer, on the twenty-ninth day of June, in the year of our Lord one thousand eight hundred and forty-one, at Chicago, in the county of Cook, aforesaid, feloniously, and without lawful excuse, had in his custody and possession, with intent to utter and pass the same as true and genuine, divers forged bank notes, commonly called bank bills, to wit, one forged bank bill, or note, purporting to have been issued by the Bank of Illinois, with intention to defraud the said Bank of Illinois, which said forged bank bill, or note, is in the words and figures following, to wit: [here follows an exact copy of the forged note, which is in the usual form of a genuine note on the Bank of Illinois.] he, the said Luther Townsend, then and there, well knowing the said bank notes, or bills, to be forged, contrary to the form of the statute in such case made and provided, and against the peace of the people of the State of Illinois, and their dignity."

The second count was the same as the first, except it charged that the forged bank note purported to have been issued by the Bank of Lyons, in the State of New York.

The third count only varies from the first in this, that the forged bank note set out in that count purported to have been issued by the Tanners' Bank of Catskill, in the State of New York.

The fourth count differs from the first in this only, that it omits to set out the forged bank notes, or to state by what bank, or banks, they purported to have been issued; and, as an excuse for this omission, charges the prisoner with having so disfigured and mutilated said notes, after his arrest, as to render a minute and accurate description of them impossible.

The only error assigned is the insufficiency of the indictment, for the following reasons :

*First.*  Neither of the counts in the indictment charges facts sufficient to constitute the offence in pursuance of the 76th section of the criminal code ;

*Second.*  There is no allegation in either of the counts, that the forged bank bills therein mentioned were " for the payment of money ;"

*Third.*  In the fourth count it in no manner appears that the said bank bills were " for the payment of money."

These three objections resolve themselves into one, and present the simple question, whether it was necessary to aver in the indictment, that the forged bank bills were for the payment of money. If such averment be deemed necessary, it will then become important to enquire whether it be made with sufficient certainty and precision in the indictment before us.

The 76th section of the criminal code, upon which this indictment is founded, provides that every person, who shall have in his possession, " any forged promissory note, or notes, bank bill, or bills, for the payment of money, with intention to utter, or pass the same, &c., " shall be punished by confinement in the penitentiary, for a term not less than one year, nor more than fourteen years." In describing the forged bank notes in this indictment, the words " for the payment of money," are omitted.

Is this omission fatal after verdict ?   The 153d section of the criminal code provides, that " All exceptions which go merely to the form of an indictment, shall be made before trial ; and no motion in arrest of judgment, or writ of error, shall be sustained for any matter not affecting the real merits of the offence charged in such indictment."

Does the omission of the words " for the payment of money," in this indictment, affect the real merits of the offence charged ? We think not.   The real offence charged, is the having in possession forged bank bills, with intent to pass the same as true and genuine, for the purpose of defrauding the bank or the public.   The term bank bills is familiar to every man in this country, and conveys a definite and certain meaning.   It is a written promise on the part of the bank to pay to the bearer a certain sum of money, on demand.

This term is understood by the community generally, to mean a written promise for the payment of money.   So universal is this understanding, that the term bank bills would be rendered no more certain by adding the words for the payment of money.   The addition would be considered mere surplusage ; indeed, it would sound harsh and awkward to say, a " bank bill for the payment of money."   We apprehend that the legislature had reference more particularly to promissory notes than bank bills, when the words,

for the payment of money, were inserted. At all events, those words are not material to the real merits of the offence charged in the indictment. It is not the policy of our laws to require so much strictness and technicality in criminal pleadings, as would discharge criminals and encourage crime. It is true that a certain degree of strictness and certainty is necessary for the protection of the innocent; and, upon this point, the legislature has laid down a plain, convenient, and sensible rule, in the 152d section of the criminal code, which is, that, "Every indictment shall be deemed sufficiently technical and correct, which states the offence in the terms and language of this code, or so plainly that the nature of the offence may be easily understood by the jury." Testing the indictment under consideration by this rule, there can be no doubt of its sufficiency. We cannot perceive how the jury could have entertained the slightest doubt as to the nature and character of the offence with which the prisoner was charged.

The foregoing remarks apply alike to all the counts in the indictment; but, upon close examination, we apprehend that the first three counts are not liable to the objection urged. The forged bills themselves are set out in full in those counts, and show upon their face to have been for the payment of money. If it be urged that this appears by way of recital only, and not by positive averment, it may be said, in reply, that the objection goes to the manner of pleading the facts, and not to the facts themselves, and therefore should have been taken advantage of, upon a motion to quash the indictment, before trial.

There being three good counts, and a general verdict of guilty, the judgment must stand, even if the fourth count should be adjudged bad. The fact that our statute has provided that the jury shall fix the time of confinement in the penitentiary, does not change the well-established rule that where there is one good count, and a general verdict of guilty, that count will support the verdict, although there are other counts which are defective.

The judgment is affirmed with costs.

*Judgment affirmed.*